IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-30438 |
| | ) | (Chapter 11) |
| JADE PRESENTS, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | Case No. 26-30439 |
| In re: | ) | (Chapter 11) |
| | ) | |
| TICKETS300, LLC | ) | (Joint Administration |
| | ) | Motion Pending) |
| Debtor | ) | |
| | ) | |

## MOTION TO UTILIZE FDIC-INSURED DEPOSITORY ACCOUNTS

Come now Jade Presents, LLC ("Jade Presents") and Tickets300, LLC ("T300") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned proposed counsel, pursuant to Federal Rule of Bankruptcy Procedure 6004, and move this Honorable Court for leave to maintain depository accounts at institutions that are insured by the Federal Deposit Insurance Corporation (the "FDIC") but that are not necessarily participants in the debtor-in-possession bank account ("DIP Account") program, and in support thereof state as follows:

### I.     Introduction

The Debtors maintain their bank accounts at Bravera Bank ("Bravera"), an FDIC-insured institution with which they have banked throughout the operation of their enterprises (including through predecessor entities since merged with—or acquired by—Bravera). These accounts are the channels through which the Debtors' affairs have long run: the collection of ticket revenue, the payment of operating and production expenses, and the routine movement of funds within the business. By this motion, the Debtors seek authority to continue using their existing Bravera accounts in the ordinary course, rather than closing them and opening new debtor-in-possession

1

accounts. Continuity serves the estate and their creditors alike: a wholesale transition of accounts at this juncture—just as the Debtors must process patron refunds, reconcile chargebacks, and administer these estates—would invite needless delay, expense, and administrative confusion to no corresponding benefit.

The Debtors are aware that the Operating Guidelines and Reporting Requirements of the United States Trustee (the "UST Guidelines") call for all pre-petition accounts to be closed and new DIP Accounts opened. But Bravera, through FDIC-insured, does not furnish specialized debtor-in-possession accounts, and rigid adherence to that requirement would burden these estates to no commensurate end. Permitting Jade Presents and Tickets300 to maintain their existing, traditional FDIC-insured accounts accords with both prevailing notions of equity and a plain-language reading of title 11 of the United States Code (the "Bankruptcy Code").

To be sure, myriad obligations attend the maintenance of a chapter 11 proceeding in this Honorable Court, many of them enforced by the United States Trustee (the "UST"). The Debtors have every intention of complying with each rigor correlative to their cases—the filing of monthly operating reports, attendance at the initial debtor interview, the ongoing provision of information when requested by the UST, and the rest—and they do not seek to shirk any of these rigors. But constraining the Debtors' banking options would serve little demonstrable purpose *sub judice*, particularly where the funds on deposit are insured to the limits afforded by the FDIC.

For these reasons, and as extrapolated upon *infra*, the Debtors respectfully ask they be permitted to use traditional depository accounts.

II.     **Argument: Traditional Depository Accounts are Adequately Insured**

For self-evident reasons, the Bankruptcy Code requires debtors' funds be held in properly insured depository and investment havens. While placing monies in a DIP Account no doubt serves

2

to achieve these ends, certain geographic anomalies create a paradigm where DIP Accounts lack pragmatism in certain cases. This is one such case.

The Bankruptcy Code does not actually mandate that debtors open new bank accounts upon filing petitions for relief, instead requiring only:

> **Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States** or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
>
> (1) a bond—
>
> (A) in favor of the United States;
>
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
> (C) conditioned on—
>
> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>
> (ii) prompt repayment of such money and return; and
>
> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31;
>
> unless the court for cause orders otherwise…

11 U.S.C. § 345(b) (emphasis added).

The UST Guidelines, however, go a step further, requiring, *inter alia*, "[t]he debtor must immediately close pre-petition bank accounts and open new 'debtor in possession' bank accounts. All receipts must flow through the debtor in possession account(s).  All disbursements should be by check." UST Guidelines, p. 3, § II(A)(1).

Under section 345 of the Bankruptcy Code, a regime is created through which DIP Accounts can be established at banks that post the requisite bond and agree to participate in the subject program. The regime, however, is plainly only applicable "[e]xcept with respect to a

3

deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States…" 11 U.S.C. § 345(b). And where the FDIC insures a bank, the institution may be understood to have the protections of "a department, agency, or instrumentality of the United States." *See, e.g.*, 12 U.S.C. § 1811(a) ("There is hereby established a Federal Deposit Insurance Corporation … which shall insure, as hereinafter provided, the deposits of all banks and savings associations which are entitled to the benefits of insurance under this chapter, and which shall have the powers hereinafter granted").

The current extent of FDIC insurance on each deposit is $250,000.00. 12 U.S.C. § 1821(a)(1)(E). Should either Debtor obtain funds in excess of the insured threshold, it will open a new account at a new institution, so as to ensure no monies lack appropriate federal insurance. But, for the time being, the Debtors believe utilization of traditional depository accounts to offer adequate security to estate funds, and accordingly respectfully seek leave to maintain traditional banking relationships.

### III.    Conclusion

WHEREFORE, the Debtors respectfully prays this Honorable Court (i) permit the Debtors to utilize non-DIP Accounts at FDIC-insured institutions, provided no single Debtor have more than $245,000.00 on deposit at any one institution at any one time; and (ii) afford such other and further relief.

*[Signature on Following Page]*

4

Respectfully Submitted,

Dated: June 7, 2026          By:    /s/ Maurice B. VerStandig
           Maurice B. VerStandig, Esq.
           The Dakota Bankruptcy Firm
           1630 1st Avenue N
           Suite B PMB 24
           Fargo, North Dakota 58102-4246
           Phone: (701) 394-3215
           mac@dakotabankruptcy.com
           *Proposed Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

           /s/ Maurice B. VerStandig
           Maurice B. VerStandig