IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-30438 |
| | ) | (Chapter 11) |
| JADE PRESENTS, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | Case No. 26-30439 |
| In re: | ) | (Chapter 11) |
| | ) | |
| TICKETS300, LLC | ) | (Jointly Administered) |
| | ) | |
| Debtor | ) | |
| | ) | |

**OPPOSITION TO MOTION TO**
**DISMISS OR CONVERT CHAPTER 11 CASES**

Come now Jade Presents, LLC ("Jade Presents") and Tickets300, LLC ("T300") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned counsel, in opposition to the *Motion to Dismiss or Convert Chapter 11 Cases* (the "Motion"), ECF No. 95, filed by the United States Trustee (the "US Trustee"), and state as follows:

**I. Introduction**

The Debtors are cautiously optimistic the Motion will either be withdrawn prior to hearing or will be mooted by confirmation of a plan of reorganization, and thusly approach this response in an intentionally minimalistic manner. However, so as to ensure their rights are properly protected, the Debtors also note the Motion to merit denial insofar as the grounds of concern expressed therein either (i) have been remedied or (ii) do not invite conversion or dismissal in the first instance.

Specifically, the US Trustee premises the Motion upon (a) a failure to produce bank statements; (b) a failure to amend schedules and statements of financial affairs; and (c) an ongoing

loss or diminution, punctuated by an inability to pay the Subchapter V trustee. Since the filing of the paper, however, bank statements have been produced and the Subchapter V trustee's fees have been paid. So the only extant issues are those enveloping schedules and a purported ongoing loss or diminution. Yet the schedules on file are, as of present, comprised of the best information held by the Debtors. And there does not exist an ongoing loss or diminution in these cases; to the contrary, these matters appear to be proceeding toward confirmation with the overwhelming support of creditors.

While two creditors' deadlines have been extended, *see* ECF Nos. 111 and 115, the deadline for other creditors to vote on plan confirmation has now lapsed, *see* ECF No. 106. As of the expiration of that deadline, 49 ballots have been received—43 in favor of plan confirmation, five against plan confirmation, and one in blank.[1] The claims represented by the affirmative votes total $263,159.85, while those represented by the dissenting votes amount to $18,655.75. And it thusly appears this case is well *en route* to a consensual confirmation, with the heft of the voting creditor body favoring plan confirmation.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

## II. Argument: There Does Not Exist Cause to Convert or Dismiss

### a. The Schedules Will be Amended if Superior Information is Discovered

At the heart of these cases is the entirely common story of debtors whose financial records exist in suboptimal form. Such is not unusual for smaller—and even mid-sized—chapter 11 cases;

[1] It is suspected this may have been a PDFing error on the part of a consumer, but the Debtors are nonetheless cognizant that, especially in a case built around the beauty of live music, "[n]o one dare[] / Disturb the sound of silence," Simon & Garfunkel, *The Sound of Silence* (Columbia Records 1964), for fear that "[t]hey'll tell you I'm insane / But I've got a blank space, baby," Taylor Swift, *Blank Space* (Big Machine 2014).

if anything, outdated and less-than-fully-reliable books and records are the increasingly prevailing norm in subchapter V cases. There are numerous ways to confront situations like these—dismissal and conversion are not the preferred methods.

For want of ambiguity: the Debtors do not presently know any specific information to be missing from their schedules or statements of financial affairs. The Debtors, rather, know their books and records are not current (as has been made plain from the outset of this case, both at the initial debtor interview and the still-ongoing meeting of creditors). Again, such is not terrifically uncommon—when a small business is in its most violent of pre-petition throes, the updating of Quickbooks is often sacrificed in the name of prioritizing other tasks.

Still, "[t]he duty of disclosure in a bankruptcy proceeding is a continuing one. . ." *Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996). And as the Debtors continue to review their own financial histories, and work with creditors to explore bank records (which have been voluntarily shared with multiple parties), the Debtors are cognizant that they may well need to amend their schedules or statements of financial affairs. If and when they uncover information necessitating such an amendment, they will not be shy to amend.

It bears recognition, though, that these are liquidating cases. The Debtors do not have an accounting staff. The Debtors are reliant on the efforts of their principal and others to comb through records and try to ascertain a better understanding than existed on the petition date. These efforts, no doubt, bode well for a successful case. But these efforts are also, to some degree, necessarily gratuitous: a debtor *cannot* be required to furnish books and records greater than those actually in in the debtor's possession, custody or control. *Cf. Waskul v. Washtenaw Cty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 639 (E.D. Mich. 2021) ("The Court 'cannot compel a party to provide information that he or she does not possess any more than it can compel that party to produce

documents that do not exist or are not in his possession, custody or control.'") (quoting *Roden v. Floyd*, 2019 U.S. Dist. LEXIS 37444, 2019 WL 1098918, at *3 (E.D. Mich. Mar. 8, 2019)); *Lowe v. District of Columbia*, 250 F.R.D. 36, 38 (D.D.C. 2008). And requiring a debtor to repair years of broken records would necessarily invite the risk of making chapter 11 unavailable to the less sophisticated of businesses that want for quality records and that lack the resources to employ a financial advisor.

Jade and T300 have turned over the bank records they have—to the US Trustee and to a major stakeholder. They have been open that they would not oppose any reasonable motions brought under Federal Rule of Bankruptcy Procedure 2004. And they have proposed a plan of reorganization that places a tenured chapter 7 trustee at the helm of their post-reorganization estates, empowered to investigate facts and pursue causes of action. *See* Proposed Plan, ECF No. 94, at §§ 7.02-7.03.

Not coincidentally, these plan provisions are intended to ensure creditors remain well protected against any facts that may be discovered post-confirmation. No chapter 5 claims are being waived and no third party injunctions are being entered. To the contrary, a well-regarded fiduciary is being afforded free reign to investigate facts and collect monies for creditors. Considering the financial limitations of these estates, and the state of the Debtors' books and records, this is an optimal outcome for all—as well as one assuredly superior to dismissal or conversion.

**b. There is No Ongoing Loss or Diminution**

The second ground for dismissal cited in the Motion is an ongoing loss or diminution. Evidence adduced at a hearing, however, will reveal no such financial hemorrhaging to be afoot. To the contrary, (i) the Subchapter V trustee's fees approved to date have been paid out of the

retainer being held by the Debtors' reorganization counsel; (ii) reorganization counsel is content with what remains of the retainer and the holding of an administrative expense claim payable through a plan; (iii) subchapter V expressly contemplates the post-confirmation payment of professionals; and (iv) there are no other cognizable expenses or obligations being incurred on the part of two entities that closed for business prior to entering chapter 11.

The Bankruptcy Code does provide "cause" for conversion or dismissal to include, *inter alia*, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). However, "the mere accrual of professional fees does not constitute a continuing loss to the estate." *In re TMT Procurement Corp.*, 534 B.R. 912, 920 (Bankr. S.D. Tex. 2015) (citing *In re Gabriel Technologies Corp.*, 2013 U.S. Dist. LEXIS 125007, 2013 WL 4672785 at *3 (Bankr. N.D. Cal. Aug. 30, 2013); *In re Miller*, 496 B.R. 469, 479 (Bankr. E.D. Tenn. 2013).

Moreover, a debtor's accrual of unpaid professional fees was expressly contemplated—and permitted—by Congress in drafting subchapter V. Whereas an "ordinary" chapter 11 debtor must pay professional fees, in full, on the effective date of a plan, *see* 11 U.S.C. § 1129(a)(9)(A), a subchapter V debtor is permitted to pay such fees over the life of a plan, *see* 11 U.S.C. § 1191(e).

Again, the Subchapter V trustee *has* been paid—funds were sent in the days preceding the filing of this brief. A sharing of counsel's retainer was informally agreed to in the earliest days of this case (long before the Motion was filed) and then reinforced in the proposed plan. *See* Proposed Plan, ECF No. 94, at § 3.02. But even if, *arguendo*, the retainer were to be exhausted or had not been extant in the first place, the Bankruptcy Code would still not regard delayed payment as grounds for dismissal or conversion.

Further, it merits notation that the Debtors have filed three separate adversary proceedings aimed at recovering estate property, while taking steps to explore the bringing of other claims. Answers have been filed in two of those lawsuits. It is reasonably expected one will be filed in the third lawsuit in the coming days or weeks. And while it is assuredly premature to judge the outcome of those cases or the recoveries that may be occasioned through their administration, it would also be errant to not recognize the bringing of litigation claims as demonstrative actions aimed at the procurement of funds that should ultimately well exceed those necessary to pay case professionals. Or, stated otherwise, there is no ongoing loss or diminution—even if professional fees are considered.

## III. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) deny the Motion, and (ii) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: October 22, 2026

By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of October, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig